# UNITED STATES BANKRUPTCY COURT
# IN AND FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TAEUS CORPORATION, | ) | Bankruptcy Case No.: |
| | ) | 15-23313 EEB |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| TAEUS CORPORATION, et al, | ) | Adversary Proceeding No.: 16-01030 EEB |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NETREIT PRESIDIO LLA | ) | |
| | ) | |
| Defendant. | ) | |

## RESPONSE OF NETREIT PRESIDIO LLC TO MOTION FOR TEMPORARY RESTRAINING ORDER

Netreit Presidio LLC ("Defendant/Creditor") responds as follows to the *Ex Parte* Motion For Temporary Restraining Order And, After Notice And An Expedited Hearing, A Preliminary Injunction Pending Ruling On Complaint To Extend The Automatic Stay ("TRO Motion") filed by Debtor Taeus Corporation ("Plaintiff/Debtor").

## BACKGROUND AND PROCEDURAL HISTORY

1. On February 24, 2011, Defendant/Creditor's predecessor-in-interest, Presidio Bethesda, LLC, entered into a commercial lease (the "Lease") with Taeus International Corporation ("TIC") for office space located in Colorado Springs, Colorado. *See* Office Building Lease, as amended, attached hereto as Exhibit A.

2. Paragraph 13(B) of the Lease states the following:
   If this Lease is assigned …Landlord may, after default by Tenant, collect the rent from the assignee, subtenant, or occupant and apply the net amount collected to rent herein reserved, *but no such assignment … shall be deemed … a release of Tenant from further performance by Tenant of covenants on the part of Tenant herein contained.*

> …
>
> Notwithstanding the consent of Landlord to any sublease or Assignment, *Tenant shall not be relieved of its primary obligations hereunder to Landlord*, *including, but not limited to, the payment of all Base Rent and Tenant's Pro Rata Share of Operating Expenses*.

Exhibit A at 11-12, ¶13(B) (emphasis added).

3. On or about September 10, 2014, TIC assigned the Lease to Plaintiff/Debtor. *See* Assignment of Lease Agreement ("Assignment"). The Assignment is incorporated into the Lease. Pursuant to the Assignment, Paragraph 13(B) of the Lease remained unmodified and in full force and effect. *See* Exhibit A at 5 ("No Further Modification").

4. Plaintiff/Debtor subsequently defaulted under the Lease, which caused Defendant to initiate a forcible entry and detainer action before the District Court for El Paso County ("State Court Action"). Defendant/Creditor named Plaintiff/Debtor and TIC as co-defendants in the State Court Action because TIC remained jointly and severally liable under the Lease and the Assignment. Exhibit A at 5, 11-2, ¶13(B). Arthur Nutter was not named as a party to the State Court Action.

5. Because Plaintiff/Debtor and TIC failed to respond to the State Court Action, on June 15, 2015 Defendant/Creditor obtained a judgment of possession for the subject premises. *See* TRO Motion at 3, ¶12.

6. On August 7, 2016, Defendant Creditor moved for a default judgment in the State Court Action against Plaintiff/Debtor and TIC, jointly and severally, for $289,418.21 in unpaid rent, future rent, pre-judgment interest, and attorney fees and costs. *See id.* at 3, ¶13. On August 12, 2016, the State Court granted Defendant/Creditor's motion for default judgment.

7. Due to Plaintiff/Debtor's and TIC's failure to pay the judgment, on October 20, 2015, Defendant/Creditor moved the State Court for permission to take the depositions of judgment debtors Plaintiff/Debtor and TIC pursuant to C.R.C.P. 69(e), and Arthur Nutter, who identifies himself as Chairman and CEO of both Plaintiff/Debtor and TIC, pursuant to C.R.C.P. 69(h) and (i). On October 21, 2015, the State Court granted Defendant/Creditor's request.

8. Defendant/Creditor subsequently caused, on or about November 1, 2015, Plaintiff/Debtor and TIC to be served with subpoenas to appear and produce documents pursuant to C.R.C.P. 69(e), and Mr. Nutter to be served with a subpoena to appear as a non-party witness pursuant to C.R.C.P. 69(h) and (i) ("Subpoenas"). *See* Subpoenas, attached hereto as Exhibit B; TRO Motion at 3-4, ¶¶15-16.

9. Pursuant to the Subpoenas, Plaintiff/Debtor, TIC and Mr. Nutter were required by law to appear for their depositions at the El Paso County District Court on December 3, 2015, at 10:00 a.m. Printed in bold and all capital letters at the bottom of each of the Subpoenas, which were drafted using Colorado Judicial Department form JDF 80, are the words "**FAILURE TO APPEAR AT THE ABOVE DATE AND TIME WILL RESULT IN ISSUANCE OF A WARRANT FOR YOUR ARREST**." Exhibit B at 1, 5, 9.

10. Neither Plaintiff/Debtor, TIC nor Mr. Nutter moved to quash the Subpoenas on any grounds. They were, therefore, required to appear on December 3, 2015 at 10:00 a.m. as noticed in the Subpoenas.

11. Plaintiff/Debtor filed its Chapter 11 petition with this Court on December 2, 2015, one day before the depositions were scheduled to take place. TRO Motion at 1, ¶1. Pursuant to 11 U.S.C. § 362, Plaintiff/Debtor's Chapter 11 filing stayed the State Court Action against Plaintiff/Debtor.

12. The Chapter 11 filing did not, however, stay the State Court Action with respect to either TIC, a solvent co-defendant in the State Court Action, or Mr. Nutter, a non-party witness who had been subpoenaed to testify with regard to Plaintiff/Debtor's and TIC's ability to pay the judgment entered in the State Court Action.

13. Notwithstanding the fact that Plaintiff/Debtor's Chapter 11 petition had no effect on either TIC's or Mr. Nutter's obligation to appear at deposition in response to the Subpoenas, neither TIC nor Mr. Nutter appeared on December 3, 2015 as required by law.

14. Due to TIC's failure to appear, on January 15, 2016, Defendant/Creditor moved for the issuance of a bench warrant for the arrest of Mr. Nutter, TIC's Chairman and CEO. The bench warrant for Mr. Nutter's arrest for TIC's failure to comply to the Rule 69(e) subpoena issued on January 22, 2016 ("Bench Warrant").

15. On February 3, 2016, Plaintiff/Debtor filed the adversary complaint in this action, seeking to extend the automatic stay to solvent co-defendant TIC or, alternatively, equitable relief in the form of an injunction prohibiting the "continued prosecution of the [State Court] Action against [TIC] and Art Nutter until the effective date of a chapter 11 plan of the Debtors [sic] or further order of the Court …." *See* Complaint To Extent The Automatic Stay Or, In The Alternative, To Obtain An Injunction Or Other Equitable Relief (Docket No. 1), at 4-5.

16. On February 8, 2016, after the bench warrant had already issued, TIC and Mr. Nutter moved in the State Court Action for a stay of the issuance of the bench warrant on the grounds that there exists a "similarity of identity" between Plaintiff/Debtor and TIC ("Motion to Stay"). Neither TIC nor Mr. Nutter provided an affidavit or any other evidence in support of the Motion to Stay. Defendant/Creditor opposed the Motion to Stay.

17. On March 9, 2016, the State Court denied TIC's and Mr. Nutter's Motion to Stay, finding that an automatic stay granted pursuant to 11 U.S.C. §362 does not extend to solvent codefendants of the debtor.

18. Plaintiff/Debtor's TRO Motion ensued.

## ARGUMENT

**Plaintiff/Debtor Is Not Entitled To Entry Of A Temporary Restraining Order**

19. Because Defendant/Creditor has notice of the TRO Motion, "the procedure and standards for issuance of a temporary restraining order mirror those of a preliminary injunction." *Abu-Nantambu-El v. Lovingier*, C.A. No. 06-cv-00945-WDM-CBS, 2007 U.S. Dist. LEXIS 18722, *8-9 (D. Colo. Jan. 17, 2007) (citation and internal quotations omitted). A preliminary injunction is an extraordinary remedy that should only be granted where its necessity is clearly and unequivocally established. *Id.* (citation omitted). In the Tenth Circuit,

> a party seeking a preliminary injunction must establish four prerequisites: (1) he or she will suffer irreparable injury unless the injunction issues; (2) the threatened injury … outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.

*Id.* (quoting *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Where the preliminary injunction would disturb the status quo, is mandatory as opposed to prohibitory, or would provide the movant with all the relief he may recover after a full trial on the merits, the movant must demonstrate that the four factors above "weigh heavily and compellingly in movant's favor" before a restraining order may issue. *Id.* (citing *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 10978 (10th Cir. 1991). Plaintiff/Debtor's request that Defendant/Creditor be enjoined from pursuing post-judgment discovery from Plaintiff/Debtor's solvent co-defendant and its Chairman and CEO falls well short of the "extraordinary" circumstances contemplated by Fed. R. Civ. P. 65 and applicable case law.

20. Here, because the Bench Warrant has already been issued in the State Court Action, and because Plaintiff/Debtor seeks to extend protection of the Bankruptcy Code to non-debtor third parties TIC and Mr. Nutter, the injunction sought by Plaintiff/Debtor is not seeking to preserve the status quo, but to overturn it. Moreover, the equitable relief sought in the TRO Motion is identical to the relief sought in Plaintiff/Debtor's adversary complaint. As such, Plaintiff/Debtor's request for an injunction preventing Defendant/Creditor from taking the depositions of TIC and Mr. Nutter is subject to the heightened standard described in *Lovingier*, and Plaintiff/Debtor must demonstrate that the four elements of a preliminary injunction "weigh heavily" in its favor.

**Plaintiff/Defendant Has Failed To Meet The Standard For Issuance Of A Preliminary Injunction**

21.     While it is generally recognized that Courts have the authority under 11 U.S.C. § 105(a) to enjoin actions against third parties such as co-debtors, this form of injunctive relief is considered "an extraordinary remedy to be granted only when a significant and direct impact on the reorganization proceeding is threatened." *United Model Distribs., Inc. v. Railway Express Agency, Inc.*, Bankruptcy No. 90 B 24821, Adversary No. 91 A 1120, 1992 Bankr. LEXIS 2325, *8 (N.D. Ill. May 1, 1992) (citation and internal quotation omitted); *see In re River Family Farms*, 85 B.R. 816, 819 ("power to enjoin creditors' actions against a co-debtor or guarantor should only be used in limited circumstances where a determination is made that failure to so enjoin would adversely affect the bankruptcy estate and pressure the debtor through that third party.") Indeed, even where such limited circumstances exist, the burden for enjoining actions against non-debtor third parties is "very demanding." *In re University Medical Ctr.*, 82 B.R. 754, 758 (E.D. Pa. 1988). Plaintiff/Debtor has failed to meet this very demanding burden.

**Plaintiff/Debtor has not demonstrated that it is likely to succeed on the merits**

22.     Because Plaintiff/Debtor's request would alter the status quo, it must make a "strong showing … with regard to the likelihood of success on the merits … and may not rely on a less stringent modified likelihood-of-success-on-the-merits standard." *Lovingier*, 2007 U.S. Dist LEXIS 18722, *13-14 (quoting *Shrier*). "Success on the merits has been defined as the probability of a successful plan of reorganization …." *In re Otero Mills, Inc.*, 21 B.R. 777, 779 (D.N.M. 1982). In *Otero Mills*, the Court enjoined a foreclosure against the President and a shareholder of the debtor, who had been named as an individual defendant in the underlying state court action as a guarantor, on the grounds that foreclosure action would impair Otero Mill's ability to file its reorganization plan because the officer/shareholder was going to contribute personal assets to the reorganization. *Id.* However, the Court in *Otero Mills* allowed the creditor to record judgments in other states, and noted that the creditor was protected on the debtor's debts by virtue of other assets. *See Mahaffey v. E-C-P of Arizona, Inc.*, 40 B.R. 469, 472 (D. Colo. 1984) (citing *Otero*). Moreover, the *Otero Mills* Court further indicated that it would lift the injunction if *Otero Mills* failed to file its reorganization plan on time, and would consider lifting it if the creditor "later felt like it was no longer adequately protected." *Id.*

23.     The facts in *Otero* are not present here. First, Mr. Nutter is not a party to the underlying litigation, nor is Defendant/Creditor seeking to enforce the judgment in the State Court Action against him. Second, Defendant/Creditor is not protected by virtue of the existence of other assets, as was the creditor in *Otero Mills*. Nor has Plaintiff/Defendant presented any evidence that TIC will be contributing assets to Plaintiff/Defendant's reorganization.

24.     Indeed, if there is any similarity between the facts in *Otero Mills* and the present case, it is that the debtor in both actions had yet to file its plan of reorganization.  The Court in *Otero Mills* specifically held that the creditor could apply to have the injunction lifted if the debtor failed to file its reorganization plan by the deadline. Here, Plaintiff/Debtor has already

applied in the Chapter 11 proceedings to have the March 31, 2016 deadline for submitting its reorganization plan extended by seventy-one (71) days to June 10, 2016. *See In re TAEUS Corp.*, Bankruptcy Petition # 15-23313-EEB, Motion for Order Extending Exclusivity Period for Filing a Plan of Reorganization (Docket No. 57). Plaintiff/Debtor should not be permitted to use Section 105 to artificially delay for months Defendant/Creditor's ability to take discovery on non-debtor third parties.

25. Finally, and alternatively, Plaintiff/Debtor argues that that Plaintiff/Debtor and TIC have such an identity of interest as to satisfy the success on the merits claim. TRO Motion at 10, ¶¶43-44. However, Plaintiff/Debtor offers no evidence whatsoever, either by affidavit or otherwise, in support of its claim. Moreover, Plaintiff/Debtor asserts, incorrectly, that TIC is the only obligor on the Lease, and Defendant/Creditor's inclusion of Plaintiff/Debtor in the underlying action is somehow an "acknowledgment that [Plaintiff/Debtor] is the real party-in-interest" in the State Court Action. As explained above, both TIC and Plaintiff/Debtor are jointly and severally liable per the terms of the Lease and the Assignment. As far as Defendant/Creditor knows, Plaintiff/Debtor and TIC are legally separate entities, and TIC is a non-debtor co-defendant that should not be permitted to a "free ride" due to Plaintiff/Debtor's unsupported assertions in this matter. *See, e..g*., *In re Juneau's Builders Center, Inc.*, 57 B.R. 254 (M.D. La. 1986); *In re O.H. Lewis Co.*, 40 B.R. 531 (D.N.H. 1984); *In re Venture Properties, Inc.*, 37 B.R. 175 (D.N.H. 1984).

26. As was the case in *Mahaffey*, *supra*, cited by Plaintiff/Debtor in the Motion for TRO, Plaintiff/Debtor has failed to make any showing that it is likely to succeed on the merits, let alone a strong showing. *See Mahaffey*, 40 B.R. at 474 ("A plan can be proposed and carried out by debtor without exhausting every available moment of Mr. Mahaffey, Jr. I must also conclude that there is not a reasonable likelihood the debtor will prevail at any final trial in this matter.") Plaintiff/Debtor has likewise failed to demonstrate that Defendant/Creditor's deposition of TIC and Mr. Nutter will in any way impair its reorganization efforts, and it has failed to offer any evidence whatsoever that Plaintiff/Debtor and TIC share an identity of interest sufficient to make a strong showing of a likelihood that it will succeed on the merits. The TRO Motion must, therefore, be denied.

**Plaintiff/Debtor has failed to demonstrate that it will suffer irreparable injury if Defendant/Creditor is permitted to depose TIC and Mr. Nutter**

27. Plaintiff/Debtor alleges in the TRO Motion that it will suffer irreparable injury should an injunction not issue. TRO Motion at 11, ¶¶46-53. A plaintiff suffers irreparable injury where an effective monetary remedy is unavailable after a trial on the merits because such damages would be inadequate or difficult to ascertain. *Lovingier*, 2007 U.S. Dist. LEXIS 18722, *22. Here, Plaintiff/Debtor alleges it will suffer irreparable injury for the following reasons: (1) requiring Mr. Nutter to appear at the deposition will distract him, as an officer of Plaintiff/Debtor, from participation in Plaintiff/Debtor's reorganization efforts; (2) the State Court requirement that Mr. Nutter post a bond in the amount of $1,000.00 in the event of his arrest would somehow "require the [Plaintiff/Debtor] to use estate assets"; and (3) because TIC

6

is a mere "shell organization," any efforts to depose it will "adversely affect [Plaintiff/Debtor's] reorganization efforts." TRO Motion at 11, ¶¶50-52.

28. Plaintiff/Debtor correctly notes that some Courts have granted preliminary injunctions on a temporary basis upon a showing that the non-debtor's time, energy and commitment to the debtor are necessary for the formulation of a reorganization plan. TRO Motion at 11, ¶48. However, all of the cases cited by Plaintiff/Debtor involve circumstances far different from those present in this case. For example, in *In re Johns-Manville Corp.*, the Bankruptcy Court for the United States District Court for the Southern District of New York enjoined "various direct actions and discovery proceedings" against a multitude of "former and future … officers, directors, employees, insurers, sureties and other agents" in a massive litigation regarding asbestos liability. 26 B.R. 420, 422 (S.D.N.Y. 1983) ("*Manville I*"), *rev'd, in part In re Johns-Manville Corp.*, 41 B.R. 926 (S.D.N.Y. 1984) ("*Manville II*"). Despite this holding, the Court permitted limited discovery, including depositions of current and former employees. *See Manville II* at 928. Moreover, on appeal, the Court in *Manville II* reversed *Manville I* to allow limited discovery of a solvent non-debtor co-defendant. *Id.* at 932-933.

29. In *In re Philadelphia Newspapers, LLC*, the Court upheld the issuance of an injunction to enjoin suit for sixty days against third party non-debtors, including the debtor's in-house counsel and the debtor's CEO, both of whom had been named as defendants in a defamation action. 407 B.R. 606 (E.D. Pa. 2009). The Court determined that the CEO's and in-house counsel's involvement in the defamation suit would consume enough of their time as to have an adverse impact on the debtor's reorganization efforts. *Id.* at 617.

30. In this case, Defendant/Creditor merely seeks to take the deposition of TIC and Mr. Nutter. The underlying State Court Action is in the collection stage, and Defendant/Creditor has the right to take post-judgment discovery from TIC, as a judgment debtor, and Mr. Nutter, as a non-party witness, in order to determine TIC's ability to pay the judgment. In fact, the discovery is intended to explore Plaintiff/Debtor's, TIC's and Mr. Nutter's claims, unsupported by affidavit or any other evidence, that TIC transferred all of its assets to Plaintiff/Debtor in 2014. TRO Motion at 5, ¶21. Aside from bald assertions that sitting for a deposition will somehow "distract" Mr. Nutter from the reorganization efforts, Plaintiff/Debtor has failed to offer any evidence that the deposition will irreparably injure Plaintiff/Debtor.

31. Plaintiff/Debtor further argues that the $1,000.00 bond set by the State Court in relation to the Bench Warrant "would require the Debtor to use estate assets." TRO Motion at 11, ¶51. The Bench Warrant was issued against Mr. Nutter in his capacity as Chairman and CEO of TIC. Plaintiff/Debtor has not produced any indemnification agreement between Plaintiff/Debtor and TIC, or TIC and Mr. Nutter to support Plaintiff/Debtor's assertion. Again, discovery is warranted to determine whether any such indemnification agreement exists.

32. Finally, and notwithstanding the fact that Plaintiff/Debtor identifies TIC as "essential to [its] reorganization efforts," TRO Motion at 6, ¶26, Plaintiff/Debtor asserts that TIC

is merely a "shell organization" whose assets were transferred to Plaintiff/Debtor in 2014. TRO Motion at 5, ¶21, 11, ¶52. Again, Plaintiff/Debtor provides no affidavit or other evidentiary support for this assertion. Defendant/Creditor should be permitted to depose TIC and Mr. Nutter to determine the truth of these allegations. Plaintiff/Debtor's TRO Motion, therefore, must be denied.

**Plaintiff/Debtor has not demonstrated that balancing the equities favors an injunction**

33.     Plaintiff/Debtor asserts that requiring Mr. Nutter to appear for deposition in response to the Subpoenas constitutes a "diversion of [Plaintiff/Debtor's] time and financial resources" sufficient to pose an "imminent threat" to Plaintiff/Debtor. TRO Motion at 12, ¶60. Plaintiff/Debtor's hyperbole is belied by the facts. Plaintiff/Debtor has presented no evidence that Defendant/Creditor's deposition of TIC or Mr. Nutter will in any way harm Plaintiff/Debtor's reorganization efforts. Plaintiff/Debtor is not seeking to enjoin an incipient litigation here – the State Court Action is in post-judgment discovery and collection proceedings. Instead, Plaintiff/Debtor is seeking to improperly use these bankruptcy proceedings continue to deprive Defendant/Creditor of any means by which it might collect the judgment it obtained in the State Court Action against a solvent co-defendant who is jointly and severally liable. The law in the 10th Circuit is clear: solvent, third party co-defendants in an underlying action are not entitled to the protection of Section 105 or 362 in order to avoid discovery absent unusual and extraordinary circumstances. *Okla. Federated Gold & Numismatics, Inc., v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994); *Fryberger v. Trip TV, LLC*, 2016 U.S. Dist. LEXIS 3085, *2 (D. Colo. Jan. 11. 2016). A balancing of the equities favors denial of the requested equitable relief.

**An injunction would not serve the public interest**

34.     While it is true that in Chapter 11 proceedings it is in the public interest to promote the bankruptcy petitioner's reorganization efforts, Plaintiff/Debtor has failed to provide any evidence that Defendant/Creditor's deposition of TIC or Mr. Nutter will in any way adversely affect those its reorganization efforts. Plaintiff/Defendant's TRO Motion should not be viewed as an attempt to facilitate its efforts at reorganization, but simply as yet another means by which TIC is seeking to avoid paying its bills without having to file for bankruptcy itself. Surely it is not in the public interest to allow non-debtor third party co-defendants to avoid discovery without even a shred of evidence that allowing the discovery to go forward will somehow adversely affect the debtor's efforts at reorganization. The public interest would not be served by granting Plaintiff/Debtor's request for an injunction, and it therefore must be denied.

## CONCLUSION

35.     Plaintiff/Debtor seeks by its TRO Motion to utilize bankruptcy protections reserved for debtors to grant a "free ride" to solvent, non-debtor co-defendant TIC. In support of its request for equitable relief, Plaintiff/Debtor has offered nothing more than mere allegations that deposing TIC or Mr. Nutter will adversely affect its reorganization efforts. Such allegations, without more, are simply insufficient to justify the issuance of an injunction. *In re Juneau's*, 57

B.R. at 258-259. The debtor must show that the creditor is not pursuing its legitimate right to collect from the third party, but rather using the action against the third party to pressure the debtor. *Id.* at 258. Plaintiff/Debtor has made no such showing, and its request for equitable relief must be denied.

|  |  |
|---|---|
| Dated:  March 22, 2016 | Respectfully submitted, |
|  | THE LAW OFFICES OF THEODORE W. BRIN |
|  | */s/ Robert E. McGough* |
|  | Theodore W. Brin |
|  | Robert E. McGough |
|  | 1601 Blake Street, Suite 305 |
|  | Denver, Colorado 80202 |
|  | Tel:  303.220.7601 |
|  | Fax:  303.220.7252 |
|  | Email:  theo@brinlaw.com | robert@brinlaw.com |
|  | *Attorneys for Netreit Presidio LLC* |

# CERTIFICATE OF SERVICE

      I certify that on March 22, 2016, I served a copy of the foregoing **RESPONSE OF NETREIT PRESIDIO LLC TO MOTION FOR TEMPORARY RESTRAINING ORDER** via CM/ECF upon all parties against whom relief is sought and those otherwise entitled to service pursuant to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, at the following addresses:

Michael J. Davis
BKN Murray, LLP
6795 E. Tennessee Avenue, Suite 330
Denver, Colorado  80224
Telephone:  720.361.6036
Telefax:  303.758.5055
Email:  mdavis@bkmurray.com
*Attorney for Debtor*

U.S. Trustee
1961 Stout Street
Suite 12-200
Denver, Colorado  80294

Alan K. Motes
1961 Stout Street
Suite 12-200
Denver, CO  80294

          */s/ Robert McGough*